Counsel, you'll each have 10 minutes per side, and if you'd like to reserve any time, you can watch the clock. Thank you, Your Honor. May it please the Court, Kara Hartzler, Federal Defenders, on behalf of Mr. Kumar. I'm going to continue the Miranda discussion that we are so interestingly engaged in. You do get to benefit our questions from the prior case. And I think that whatever lines the Court is struggling to draw, this case clearly crossed them. If I could disagree with you in advance on clearly, I think it's a difficult case.  But I am interested. What makes this case different? And I know you may not be familiar with the facts of the prior case. It's not your case. But I'm interested to know why you think it clearly crosses the line. Sure. So here, as Your Honor pointed out, this is about, you know, is this something more than a Terry stump? So what happened in our case is the Border Patrol agent is parked right by the fence. He actually sees someone in the rearview mirror climbing over the wall. That person then runs north. The Border Patrol officer and two other cars give chase. They surround him. They stop him. Would you stop there for a second?  Because this will make it easier. Yes. Did they have probable cause to arrest him at that point?  Yes. They don't need to have any suspicion about his alienage. Well, the reason Having seen him jump the fence and not come in through a port of entry, they have probable cause, in your view, to arrest him, even without knowing what his citizenship is. Well, the reason for that, Your Honor, and the answer is yes. The answer is yes. The reason is yes. And then the reason on top of that is it is a crime for a noncitizen or a U.S. citizen to cross between ports of entry. And that's at 19 U.S.C. 1459. So when you see anyone crawling over the fence, that's automatic. You don't even need to decide alienage. That's automatically a crime. Is jumping over the fence, because it is a crime and because U.S. citizens can easily enter through ports of entry, some evidence of alienage? Yes. Okay. I think, you know, where that lands in terms of all of that, but yes. I think this Court has said it's some evidence of alienage. Okay. So now we get back to, I think, the facts of this case.  And I think we've all read the record. So I want to ask you a hypothetical. If the agent did precisely what he did here but never moved the car, put your client in the back seat, left the door open, and then asks the fatal questions and gets the fatal answers, would this be a permissible terrorist stop? If there was no movement in the car and there was no form. I just, that's what I said. Yes. I'm sorry. I didn't hear the form. Right. So let's say that the agents surround him, they frisk him, and they ask him questions right there. No, no. You're changing. I'm sorry. You can't change the hypothetical. Okay. I apologize. It's the only power I get from the judge. It's the post-hypothetical. All right. The hypothetical is exactly what happened here, except I'm taking out the movement of the car. Sure. Everything happens exactly the same way except rather than move the car to 20 yards, the agent doesn't do that. He just puts him in the back seat of the car and says, okay, answer these questions for me. Do we have, is that a permissible terrorist, is that permissible under terrorist? No, because of the form. Because of what? Because of the form that he was filling out that was asking biographical questions. Let me ask you this. Judge Hurwitz's hypothetical assumes that sort of placing him in the car in the first instance is still okay. My trouble is that this case would clearly be like Cabrera if they had surrounded him and they asked him questions and he stopped because he absolutely stopped, you know. I know you were on your way to kind of providing the chronology of what happened, and I'm happy to have you do that in a moment to finish sort of making your argument. But here they see an individual cross over the fence. They follow him. Multiple Border Patrol agent vehicles surround him. He stops. He doesn't flee. There's no weapon. There's no threat of danger. There's nothing. They're around him. And if they had just stopped and started asking these few permissible questions, and let's put the form, let's set aside the issue of the form, we'd be in sort of the same facts of Cabrera. And we would say that that's permissible under our case law. They could do that. But here they then did something more. They didn't just ask him questions. They put him in a vehicle, and then they moved him in the vehicle. And to me it doesn't really matter if it was 20 yards for 60 seconds or 2 miles for half an hour. They did something more. They put him in a car and then got out of the car, stood at the door, asked questions. Why is that, you know, is that what you're saying is crossing the line? Put aside the form for a second. Yes. That is exactly what I'm saying. Okay. So my question was now meant, because I understand this is the issue of the case, to try to figure out what turned it into custody in your point, in your view. Was it merely putting him in the car and the movement doesn't matter? Because if those were the only facts, you would still say he was in custody? Or is it putting him in the car and moving it? There is absolutely no case law from this court that has ever found that someone's moved and it's not custody. Now, we're kind of talking on hypotheticals here, but let me – Well, no, there's plenty of case law that allows movement. It may not. It allows movement for a reason. We have plenty of case law that says you can – It's a justification that you can put somebody in a car and even move them. I view these two facts to be, you know, frankly indistinguishable, putting them in the car, moving them. There is this additional act. That's okay if there's something that justifies it. And we're going to ask your friend on the other side to tell us what here justified that. So I'm trying to parse this. So is it just putting him in the car that turns this into custody? Or is it putting him in the car and moving him that turns it into custody? Two responses, Your Honor. First of all, I would point to the line in Berkmer that says that if there – it is unquestionably custody if an officer instructs someone to get in a police car. So right there I think we could look at that. But even a part – No, no, no. I would to those cases say there's unquestionably custody if a police officer arrests someone and then places him in a police car. They're all cases in which there was an arrest and the person was then placed in the police car. There's no arrest here. So those cases don't get me there. You're arguing that there was an arrest because they put him in the car. Yes, exactly. But let's put that aside. So let's say then that, you know, he's in the car. Then I think the question does turn to was there a justification of flight or danger. Here there wasn't. Obviously there were four – at least four agents to one person. They actually took him back to the border, which other agents have said, well, we take them away from the border. What I'm interested in this is that it seems to me he's every bit as much – his movements are every bit as much restrained if they ask the questions while he's surrounded by four agents than if they ask the questions when they say, sit down in the back of the car. Now we don't need to surround you with four agents because it's harder to flee from the back of the car and now we'll ask the questions. So in my own mind, I'm having difficulty seeing what the difference between our established case law, which says it's fine to surround him with six or seven armed agents and ask him the questions and he's not in custody, with a supposition that, well, if you just say, sit down in the back of the car and I'll stand between you and escaping, that turns into custody. So that suggests to me that you must be relying on the movement of the car. I think there's a lot of reasons that there was custody here. Movement in the car was one. The form was another. I would like to save some of my time for rebuttal if that's possible. Thank you, Your Honor. I appreciate the balance of your time. Thank you. Morning. May it please the Court. Zach Howe on behalf of the United States. I'm happy to start with the probable cause question. No, maybe you can start. Tell me why the car got moved. Oh, sure. I want to know why he got put in the car and then why the car got moved. I think those are two separate questions. The third point is why wasn't that an arrest? Yeah, sure. So admittedly, the agent didn't get to give a full explanation here. He did get to get out a few sentences. This is at page 25 and 26 of the record. His answer was that smugglers often send others over the border, and so he had to get back to his spot on the line. So in other words, he's worried about others coming over the border and him not seeing them. He's not worried about this individual. There's no threat of danger or fear of flight. He needs to get back to the line, and so he takes this individual into his car, whereas he could have asked questions right there when they surrounded him. So I think that's the reason for the movement is others. The reason for putting him in the truck in the first place, I think— I'm not sure that's helpful to your case, because our line of cases say you need something more to justify a restraint beyond just sort of asking questions in a, you know, setting that the person already exists in. So let me break it up. So the reason he's put in the truck in the first place is because it's 3 a.m., he jumps over the border fence, and then he's sprinting away. He makes it 50 yards. So there is flight demonstrated by this individual. No, no, no. But then they—he runs—you know, he comes down the wall and he runs. Then when the Border Patrol agents see him, surround him, he does not flee. Do you agree with that? Yes. He stops. Do you agree with that? Yes. There's no weapon on him. Do you agree with that? Yes. Okay. So he's there. He's surrounded. He's not a threat to the officers in terms of a weapon or danger. They don't feel afraid. And he's not actively fleeing. Do you agree with that? I agree with that. The only caveat I give is I believe the pat-down occurred—no, sorry, the pat-down did occur before he was put in the truck. So I do agree with that. The only point I'll make is that in seeing the court approved of this very thing, putting someone in the back of the truck, in other cases, the court has approved of doing that. Well, but let me stop you there. And Judge Desai and I may or may not agree on this, but I want to sort of make the point of my question clear. Let's assume that under the circumstances, putting him in the back seat of the car didn't transform this Terry stop into a custodial stop. Just assume that for purposes of argument. He then shuts the door and drives the car. He has a good reason to drive the car for law enforcement purposes, which is he wants to be able to see whether somebody else is coming across. But that's not related to this defendant. In other words, he's not moving this defendant for any good reason. He's only moving himself for a good reason. And so I'm trying to figure out whether now we've got him, you know, under circumstances that look more like custody. And if the reason was I don't want to question him until I get away from the scene because I'm afraid other people will show up, I'd understand it. But the reason here is a reason unrelated to this defendant or any danger that he poses or any flight of risks that he poses. The reason here is I want to catch more. I want to see if there are more people coming. And I'm trying to figure out why that doesn't transform this into custody. So let me give you the best analogy I can. I think the closest case on point here would be Galindo Gallegos. So there you had 15 to 20 individuals fleeing from the border. They were stopped, ordered to sit down in a circle. The individual defendant kept running. He was stopped, apprehended, handcuffed. And I think that's more coercive than being put in the back of a truck. But that's not this case. The reason I say it's similar is because then the defendant was brought back to that group. And the reason it was okay is because there you had other individuals who could have posed a risk of flight because the agent who was still there was outnumbered. Well, that's not related to the individual defendant who had been subdued. By the same token here. No, no, no. Their flight and danger risk under the case you're segueing into, the question that Judge Hurwitz asked you was the significance of the fact that the agent had other stuff to do. He had to go back to his main beat and look for more suspects. Your Honor, I think the difference is, I think we're still dealing with a risk of flight of individuals. The only difference is that in Galindo Gallegos you had identified the individuals. Isn't it true that every Border Patrol agent could just say, there's always a risk of flight. People are crossing a border and trying to get inland. So wouldn't that transform everything? I sit in my car while I look for other people who are trying to cross the  That's what you're telling us. I think often factually you will be able to disprove that. The reason being that to disprove that there was a need to transport someone to get back to the original position. But our cases require the government to assert the justification for that additional step, not the other way around. I mean, if we adopt, I think what you're arguing, then the baseline would be that you can put anybody in a vehicle and move them or handcuff anybody because there's always sort of an assumed risk of flight or danger. And they would somehow have to disprove that in order to not be in custody and be interrogated without Miranda. Your Honor, I do think it's the defendant's burden to show that they are subject to custodial interrogation as the proponent of the motion. But here, I do think you will have many cases where it's easy to show that there's no justification for it. So for example, if this had been 3 p.m. as opposed to 3 a.m. and you could easily say, well, look, being 30 yards further into the country, you could still see the border clearly. So even if there was a risk of someone else, I don't blame the agent for wanting to move the car. He may have had wonderful purposes for it. The question is whether vis-a-vis this individual, that transformed this into a custodial stop that would have required before he questioned him just a simple reading of Miranda warnings. Nobody's trying to interfere with the way law enforcement patrols the border. We have a very technical question here, which is whether or not all these facts add up to custody. And I'm sympathetic, maybe my colleagues aren't, I don't know, to the notion that you don't have to question him standing up in the middle of the six agents. You could say, sit down in the back of the car and I'll question you. Because both of those prevent the person from fleeing. And he's obviously somebody who likes to run because those are the facts of his case. That's okay with me, I think. But I'm now wondering why the agent said, well, for my own purposes I'd like to keep you back there longer because I have other things to do. And in the context of a Terry stop on the street, we would never allow that. We would never allow a cop to say, well, I'd like to ask you questions, but I've just gotten another call. So get in the back of my car and I'll drive you before I ask you the Terry questions. So I'm trying to figure out what the difference is here. It's the government that invokes the Terry framework. So why was it necessary to put him in the car and move him? And then my next question, and I'd like your friend to be able to address this too, is does it matter that the movement was quite brief, both in terms of distance and time? Sure. And I'm trying not to split hairs here, but I think there's a difference between putting in the car and then the movement. The putting in the car, I think, is because he's just witnessing. Right. And I've asked you to assume that putting him in the car is okay. Okay. I'm trying to figure out whether once having put him in the car, shutting the door and moving the car makes a difference in our analysis of  And if it does make a difference, what relevance to that analysis is the amount of distance and the time? Sure. So I think the answer is it does make a difference, and it quite often will tip the scales in terms of you concluding that it is custodial interrogation. I do think the brief duration and where he's going and all of that matters Tell me what case law helps you there.  So I think, again, I know Judge Parker doesn't like this example. I think the best case I can quote for you is Galindo Galagos. The reason being It's our fault. You're stuck with the cases we decide. Maybe to put this in terms of the way this court has phrased it before, this court has often said that the question is whether a reasonable, innocent person in the defendant's shoes would feel like they were free to go after brief questioning. Now, obviously, in Galindo Galagos, if you've just been chased down, handcuffed, and then walked back to a room. But we don't just ask that one question. If that were the question, then what any one of these individuals said alone would be dispositive of whether or not the non-Mirandaized questioning was okay. So we go beyond that to say, okay, does a reasonable person feel like they're in custody? And if there are these additional steps taken, like putting them and moving them in a car, was that justified? And usually it requires the agent to articulate something. Like in the case you're citing, and I think this is why, and this is not your fault. These cases really come out based on sort of some very minor nuance in the facts. But the facts of that case that you're citing in Galindo Galagos, there are 15 to 20 people. The guy is actively fleeing the border patrol agent. There are many additional facts that they then asserted, the government then asserted as the justification to handcuff those people. Those just don't exist here. In fact, there's no articulation of a justification by the border patrol agent for the four that surrounded him in doing what they did. Well, again, so I think now we're going back to the original stop, and I'm happy to address that there. Well, he's got plenty of good reason for the original stop. We know that. And I think they have plenty of good reason to restrict his movements. We know that. The question is, and our cases say those restrictions on movement are perfectly appropriate if necessary for law enforcement purposes before you ask the Terry questions. So that's why handcuffing people or Galindo and all that's okay. The question is, what's the justification here for waiting to ask the Terry questions until after the door is shut and the car is moved? And I think that boils down to a simple factual dispute about whether it is a sufficient justification when the individuals who might be fleeing have already been identified, as in Galindo Galagos, because they're there. Moving the car doesn't place the officer in any better position vis-a-vis this question than if he questioned him, as I suggested he might have, when he first put him in the back seat. I'd understand if there were people running around doing stuff and the officer says, let me get you in the car and move you because I don't want them coming around to get you. But he doesn't say that. All he says is, for purposes not related to you, I thought law enforcement duties required that I move the car, and I accept that to be true, but I'm not sure why that made it inappropriate for him to ask the Terry questions earlier rather than later. So, for purposes other than you, I think is a rationale this court has accepted. The only question here, I think, is whether you agree with it in this case, the particular rationale other than you, as opposed to the one in Galindo Galagos. That's the reason I point to that case. It's because it's a reason other than you for moving the defendant because the other individuals might flee. So here, again, I think you have to accept the premise that you can do it for reasons other than you. It's just do you buy that rationale in this case on these particular facts? Let me ask the question differently then. What circumstance made it not inappropriate, difficult, hard, dangerous, for the officer simply to ask the Terry the questions when he put him in the back of the car? So, as I read it, and again, the questioning got cut off here, so the explanation is very brief. It's a couple of sentences. But the officer says that smugglers might send others over the border. And as I read that, he needs to get back to his original place on the line because he needs to look out for individuals who might jump over the border. Do you think that that's – does that answer your question? I'm just going to ask you one last question, and you're out of time unless my colleagues have any other questions. I think we've asked everybody who's made arguments on these issues today this question, but I'm not sure you've answered it. Do you believe that the Border Patrol agent had probable cause at the time that they apprehended him or stopped him based on what they had seen of him crossing the fence? I think the answer is quite probably yes. And this was what I was trying to say at the outset is I don't actually think that's relevant to the analysis. In Berkimer, the officer had probable cause to arrest because he saw a car swerving all over the road, and the individual got out and staggered. And the officer said he was going to arrest him from the moment he saw him get out of the car. And the Supreme Court said that's irrelevant to the determination of custody. And then in Galindo-Galagos, this court said the same thing. And you could look at virtually the fact pattern of any one of these cases. I think the reason we're asking the question is because we are exploring whether or not these cases would be better off under a different analysis than the Terry Stopp analysis, which is that there are sufficient facts in the border cases that allow agents to determine probable cause at the outset to arrest an individual. Sure, and I've been giving you the precedential answer, and my precedential answer is unfortunately I think the ship has sailed. You'd probably have to go on bonk, and even then I think Berkimer probably stands in your way. I think we agree with you on that. That's the most accurate answer to any question we've gotten today. The common sense answer, if I can give it, for why that rationale in those cases might make sense is because it's not just to confirm suspicion of criminal activity. It's to dispel it. It's to what, I'm sorry? To dispel it. Now, in these situations near the border, I admit you're probably almost always going to be confirming it, but you can imagine admittedly probably a far-fetched scenario where, you know, an agent walks up to someone that, you know, has just jumped over the border, and the person says, thank goodness you're here. Someone was chasing me while I was visiting Mexico. Here's my U.S. passport. You know, it's far-fetched, but you can imagine a scenario where someone's dispelling these suspicions as opposed to confirming them, and I think that's always been the rationale behind applying this rubric to the... Yeah, and I think we all understand this is a dangerous job done under difficult circumstances, and the agents are trying to do the right thing in almost every case we see. So I think what we're trying to explore is whether the legal framework that we've imposed on this is a realistic one and whether we ought to view it through a different lens, but your answers in that have been helpful. They may not be dispositive in this case. Thank you, and you'll get 10 more minutes in the next case we're arguing, so thank you. We've hatched this through a lot. I don't want to take it too much longer, but I do want to answer Judge Hurwitz's question, which was, does it matter that movement was brief in terms of distance or time? I agree with Judge Tsai. I think it could be half an hour. She's only asking questions. She wasn't stating a position. Well, I think it... I think you already stated the position that it doesn't matter. I think it doesn't really matter. I think as soon as you move someone, that's custody. Your friend didn't get to that, and I must tell you that's what troubles me about this case. Maybe it's not dispositive, but I just want to ask you about it. It's a pretty puny set of facts. In other words, it's one minute. The entire episode takes one minute, and if you start from my premise, which you don't, that he wasn't in custody when he was first put in the back seat, I'm trying to figure out why these 60 seconds transformed it into custody. If the officer had started to move and said, oops, I forgot to ask you back there whether you're a citizen, and he said, oh, yeah, no, I'm not. I mean, it seems to me in terms of the actual imposition of restraint on your client, it's so much less than in a case where he'd be put on the ground and handcuffed. And so I'm trying to figure out how to put all that into this analysis. Although I agree with the point that once you move, that's custody, I think the court can consider duration, can consider time. I'm not saying that those are not relevant to the overall analysis of whether there's custody. But here, whatever metric you used, there was absolutely probable cause. Let me pose this another way, just so you understand my dilemma. Sure. Let's assume in the previous case we heard where we say, gee, our case law says putting you on the ground and handcuffing you is in custody, which seems to me like what every person in the world would understand to be in custody. But we hold in this case that leaving you in a car for 60 seconds comes out to be custody. It seems to me that while the law may compel both of those results, the law would then be pretty silly, wouldn't it? I think as has been acknowledged today, the law in this area, in this circuit, is a little jumbled. And, you know, there are things that this panel can and cannot do. We recognize that. But it is worth, I think, giving a bigger picture look to some of these questions and perhaps questioning them. Absent the bigger picture look, as we've all acknowledged today, that we're not really able to do here sitting as a three-judge panel, we still have our cases that sort of seem to draw a distinction between some of these things, whether we all think that they're a distinction worth a difference or not is a separate question. So if we were to adopt your view, which is this just doesn't, you know, this crossed the line because there wasn't something more that justified the placement or movement in the vehicle, what is your best case that you can provide us to say this is more like these cases that say the facts don't justify the custody versus these other cases that do? I think that's a little bit difficult because this court hasn't found a lot of Miranda violations in these type of situations. So it's hard for me to say, well, you know, because there was no Miranda violation or because there was a Miranda violation here are facts like this. But honestly we have cases like this case, though, where there is no, I mean, I think your friend on the other side just actually conceded that there wasn't even, they're not even attempting to say that there was a justification for the movement that related to the individual. It had to do with the officer's desire to get back to the line. As you said, they were moving him closer to the border, not towards a detention center or something like that. I agree, and I think that that resolves the problem. So your argument has to be about the absence of justification because we do have lots of cases that say taking them a quarter mile or all the way back away from the border for the safety of the officer or because of other exigent circumstances is okay and doesn't transform a terrorist stop into a custodial stop. So your argument in this case must be there just wasn't any good reason to do it. I don't actually agree, Your Honor. I'm not really sure there are published decisions where someone has been moved and then there is a finding of no custody. But at a minimum here, as the Court notes and the government acknowledges, there was no flight or danger justification. So that resolves this. All right. Thank you very much, Your Honor. Thank you. We're going to take a 10-minute recess, and then we'll be back for the remaining two cases for today. Thank you. I'll rise. This Court shall stand in recess for 10 minutes.
judges: Parker, HURWITZ, DESAI